UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

1

LYDIA GONZALEZ,

2

3        Plaintiff,                              Civil No. 98-1965 (JAF)

4        v.

5

EL DIA, INC., MARIA LUISA
6  FERRE RANGEL; JORGE MERCADO;
ABC INSURANCE COMPANY,
7

8        Defendants.

9  --------------------------------------

10

11                    **OPINION AND ORDER**

12       Plaintiff, Lydia González, brings this action against Defendant,

13  El Día, Inc., for employment discrimination pursuant to the Americans

14  with Disabilities Act, 42 U.S.C. §§ 12101-12213 (1990) ("ADA"); the

15  Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634

16  (1988) ("ADEA"); the Puerto Rico Discharge Indemnity Law, 29 L.P.R.A.

17  §§ 185a-185m (1995) ("Law 80"); Puerto Rico Law No. 44, 1 L.P.R.A.

18  § 501 (1990) ("Law 44"); and Puerto Rico Law No. 100, 29 L.P.R.A.

19  §§ 146-151 (1972) (amended 1990) ("Law 100"). Docket Document No. 1.

20

21  Defendant El Día, Inc., moves for summary judgment. Docket Document

22  No. 32.

23

24       Morales
25       Matos,        } by mail
26       Gonzalez
         Manzano
         8/31/01
         ORO

Civil No. 98-1965 (JAF)                                                    2-

## I.

### Factual and Procedural Synopsis

Plaintiff was born on March 7, 1933. <u>Docket Document No. 32, Exh. 1</u>. Plaintiff began working for EL NUEVO DÍA, a newspaper of general circulation in Puerto Rico, as a reporter in August 1991. <u>Docket Document No. 32</u>.

On April 22, 1997, Plaintiff slipped and fell in front of the entrance to the newspaper. <u>Id.</u> at Exh. 1. She reported the accident to the State Insurance Fund ("SIF"), which ordered her to rest. <u>Docket Document No. 32</u>. At the time of her accident, Plaintiff did not have any accrued sick leave. <u>Id.</u> To ease Plaintiff's financial burdens during her absence from work, EL NUEVO DÍA granted her several special advances. <u>Id.</u>

On or around June 12, 1997, Plaintiff met with María Luisa Ferré-Rangel ("Ferré"), Co-Director of the newspaper. <u>Id.</u> The two discussed Plaintiff's financial problems, as well as her possible retirement. <u>Id.; Docket Document No. 34, Exh. 9</u>. Plaintiff and Ferré offer different versions of the conversation.

According to Ferré, Plaintiff had previously asked her about her options for retirement, and Ferré responded to Plaintiff's inquiry by informing her of the benefits Plaintiff might receive as part of a retirement package. <u>Docket Document No. 51, Exh. C</u>. Ferré claims

Civil No. 98-1965 (JAF)                                        3-

that Plaintiff decided to retire and requested a $6,000 advance on

her retirement package. Docket Document No. 34, Exh. 9; Docket

Document No. 51, Exh. C. Plaintiff needed the money because she had

not paid three months' worth of rent and her apartment was about to

be repossessed. Id.

According to Plaintiff, she had decided not to retire, and Ferré

opposed her decision to continue working. Docket Document No. 51,

Exh. A. Plaintiff maintains that Ferré encouraged her to retire and

collect retirement benefits. Id.

The following day, Ferré authorized the issuance of a $6,000

check for Plaintiff as an advance on her retirement package. Docket

Document No. 32. Plaintiff received and cashed the check. Id.

On June 16, 1997, Plaintiff met with Jorge Mercado-Ruiz

("Mercado"), Vice-President of Human Resources for EL NUEVO DÍA. Id.

Mercado gave Plaintiff a draft of a resignation agreement and

retirement package, along with a draft of a contract for professional

services for Plaintiff to continue writing articles for the newspaper

as a collaborator. Id.

Two days later, Plaintiff met with Mercado a second time and

notified him that she had rejected the resignation agreement and

retirement package. Id. Plaintiff told Mercado that she wished to

return to work. Id. Mercado accepted Plaintiff's decision and

Civil No. 98-1965 (JAF)                                                4-

informed her that she was welcome to return to her job with the newspaper. Id. at Exh. 4.

On June 19, 1997, Plaintiff reported for work. Docket Document No. 32. Mercado reminded Plaintiff that she owed $6,000 to the newspaper, and that she was expected to repay the debt. Id. Plaintiff signed an agreement promising to repay the loan by June 27, 1997. Docket Document No. 34, Exh. 18.

On June 27, 1997, the date her repayment was due, Plaintiff informed Mercado and union representatives that she did not have the funds to pay the $6,000 she owed to EL NUEVO DÍA. Docket Document No. 32. Instead of cash, Plaintiff offered some paintings and other artwork that she owned to satisfy her debt. Id. Defendant refused to accept the goods in lieu of cash. Id.

Since Plaintiff had failed to pay back the money she owed, Mercado felt that Plaintiff had betrayed his trust in her. Id. at Exh. 4. Mercado then suspended Plaintiff from employment until she paid the $6,000 debt. Id. During her suspension, Plaintiff did not receive a salary from Defendant. Id. Plaintiff remained on the payroll of EL NUEVO DÍA and received health care and life insurance benefits. Id.

Plaintiff filed a grievance in accordance with the collective bargaining agreement ("CBA") that existed between Defendant and the

Civil No. 98-1965 (JAF)                                                          5-

United Steelworkers of America, a union of which Plaintiff was a

member. Docket Document No. 32.   On July 11, 1997, Plaintiff

participated in a grievance hearing held between Defendant and the

union. Id.  At the hearing, Plaintiff testified that she was working

for THE SAN JUAN STAR, a newspaper of general circulation which competes

with EL NUEVO DÍA in Puerto Rico. Id.  Plaintiff had begun working for

THE SAN JUAN STAR on July 7, 1997. Docket Document No. 34, Exh. 20.

On July 15, 1997, Mercado terminated Plaintiff's employment with

Defendant, allegedly because Plaintiff's employment with THE SAN JUAN

STAR violated Defendant's rule against conflicts of interest. Docket

Document No. 32.   The CBA between Defendant and the United

Steelworkers of America barred Defendant's employees, including

Plaintiff, from working for its competitors. Id.

An administrative action was later initiated, challenging

Defendant's termination of Plaintiff's employment. Docket Document

No. 34, Exh. 21.   Plaintiff requested that the union cease to

represent her in her case against Defendant, Id. at Exh. 22, and

Plaintiff's case was closed with prejudice. Id. at Exh. 24.

On August 26, 1998, Plaintiff filed the present complaint.

Docket Document No. 1.   In addition to Defendant El Día, Inc.,

Plaintiff named Ferré, Mercado, and an unnamed insurance company as

defendants. Id.  In their answer, Defendants included a counter-claim

Civil No. 98-1965 (JAF)                                                    6-

for the $6,000 owed by Plaintiff to Defendant El Día, Inc. Docket

Document No. 2.  On June 25, 1999, this court dismissed Plaintiff's

claims against Defendants Ferré and Mercado on the ground that they

cannot be sued in their personal capacities under the ADA, the ADEA,

and the associated state laws Plaintiff had invoked in her complaint.

Docket Document No. 19.

     On December 19, 2000, Defendant EL NUEVO DÍA filed its motion for

summary judgment.  Docket Document No. 32.    Plaintiff opposes

Defendant's summary judgment motion, Docket Document No. 39, and

Defendant has filed a reply, Docket Document No. 41.

## II.

### Summary Judgment Standard

     The standard for summary judgment is straightforward and well-

established.  A district court should grant a motion for summary

judgment "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." FED. R.

CIV. P. 56(c); see Lipsett v. Univ. of P.R., 864 F.2d 881, 894 (1st

Cir. 1988).  A factual dispute is "material" if it "might affect the

outcome of the suit under the governing law," and "genuine" if the

evidence is such that "a reasonable jury could return a verdict for

Civil No. 98-1965 (JAF)                                                7-

the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).

The burden of establishing the nonexistence of a genuine issue

as to a material fact is on the moving party. See Celotex Corp. v.

Catrett, 477 U.S. 317, 330 (1986) (Brennan, J., dissenting).  This

burden has two components: (1) an initial burden of production, which

shifts to the nonmoving party if satisfied by the moving party; and

(2) an ultimate burden of persuasion, which always remains on the

moving party. See id.   In other words, "[t]he party moving for

summary judgment . . . bears the initial burden of demonstrating that

there are no genuine issues of material fact for trial." Hinchey v.

NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998).  This burden "may be

discharged by 'showing' . . . that there is an absence of evidence to

support the nonmoving party's case." Celotex, 477 U.S. at 325.  After

such a showing, the "burden shifts to the nonmoving party, with

respect to each issue on which he has the burden of proof, to

demonstrate that a trier of fact reasonably could find in his favor."

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing

Celotex, 477 U.S. at 322-35).

Although the ultimate burden of persuasion remains on the moving

party and the court should draw all reasonable inferences in favor of

the nonmoving party, the nonmoving party will not defeat a properly

Civil No. 98-1965 (JAF)                                                    8-

supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. Anderson, 477 U.S. at 247-48; Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993). In addition, "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see also Anderson, 477 U.S. at 256. Summary judgment exists to "pierce the boilerplate of the pleadings," Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) and to "determine whether a trial actually is necessary." Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

                                  III.

                               Analysis

A.    Age Discrimination in Employment Act

     Defendant moves for summary judgment on the ground that Plaintiff has not shown that Defendant's legitimate, non-discriminatory reason for terminating her employment was false or a mere pretext for discriminatory animus. Docket Document No. 32.

AO 72
(Rev 8/82)

Civil No. 98-1965 (JAF)                                                    9–

Plaintiff's claim of age discrimination is based on the following:  (1) Ferré and Mercado allegedly made numerous discriminatory comments against older persons; and (2) Defendant allegedly assigned Plaintiff to cover different stories compared to the younger reporters. Id. at Exh. 1.  The record also contains testimony from Iris Landrón, Plaintiff's former supervisor and former director of the "Por Dentro" department at El Nuevo Día, that Defendant might have wanted to purge Plaintiff from the ranks because of her age. Docket Document No. 51, Exh. D.

Defendant maintains that the various comments made by Ferré and Mercado are not probative of age discrimination. Docket Document No. 32.

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).

To survive a summary judgment motion, a plaintiff must first establish a prima facie case of age discrimination. Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993).  Since Defendant concedes, for purposes of this summary judgment motion, that

Civil No. 98-1965 (JAF)                                                10-

Plaintiff has made a prima facie case of age discrimination, we need

not list the elements of a prima facie case here.

Once a plaintiff has established a prima facie case of age

discrimination, a presumption that the employer unlawfully

discriminated against the employee is created. Texas Dept. of Cmty.

Affairs v. Burdine, 450 U.S. 248, 254 (1981), and we begin the second

stage of our analysis. The burden of production shifts to the

defendant-employer to state some legitimate, nondiscriminatory reason

for the employee's termination. Mesnick v. General Elec. Co., 950

F.2d 816, 823 (1st Cir. 1991). We note, however, that the burden of

persuasion remains with the plaintiff-employee at all times. Lawrence

v. Northrop Corp., 980 F.2d 66, 69 (1st Cir. 1992); Mesnick, 950 F.2d

at 823. If the defendant sustains its burden of production, the

presumption of unlawful age discrimination is dispelled. The

plaintiff must then demonstrate that the employer's proffered reason

for the adverse employment action was pretextual, and that the real

motive behind the action was age discrimination. Lawrence, 980 F.2d

at 69-70. The plaintiff must do more than cast doubt on the

defendant's justification for the challenged action; there must be a

sufficient showing that discriminatory animus motivated the

employer's action. Mesnick, 950 F.2d at 824. Direct or indirect

evidence of discriminatory motive may do, but "the evidence as a

Civil No. 98-1965 (JAF)                                                      11-

whole . . . must be sufficient for a reasonable fact finder to infer that the employer's decision was motivated by age animus." <u>Connell v. Bank of Boston</u>, 924 F.2d 1169, 1172 n.3 (1st Cir. 1991). The plaintiff must pass this last hurdle to thwart a defendant's motion for summary judgment.

Defendant's proffered legitimate, non-discriminatory reason for terminating Plaintiff was her employment with a rival newspaper in violation of Defendant's rule against conflicts of interest. <u>Docket Document No. 32</u>. Mercado testified that Plaintiff's age was not a factor in his decision to terminate her employment. <u>Id.</u> at Exh. 4.

### 1.    **Alleged Discriminatory Comments**

A plaintiff can establish that Defendant's stated reason for her termination was a pretext for discrimination by showing that a decision-maker made discriminatory comments. <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 55 (1st Cir. 2000). For these comments to constitute evidence of discrimination, rather than mere stray remarks, they must be: "'1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" <u>Delgado Graulau v. Pegasus</u>

Civil No. 98-1965 (JAF)                                                    12-

Communications of P.R., 130 F. Supp. 2d 320 (D.P.R. 2001) (quoting

Krystek v. Univ. of S. Miss., 164 F.3d 251, 256 (5th Cir. 1999)).[1]

### a.  Statements by Ferré

In her deposition, Plaintiff testified that Ferré made numerous

comments which allegedly evidenced age discrimination. Docket

Document No. 32, Exh. 1.  Ferré purportedly made the following

statements to Plaintiff: (1) Ferré repeatedly asked Plaintiff what

her age was; (2) Ferré commented that Plaintiff dressed in an old-

fashioned manner; (3) Ferré informed Plaintiff that Ferré didn't like

the way Plaintiff styled her hair; (4) Ferré told Plaintiff that she

should move to Florida and live with her daughter and grandchildren;

(5) Ferré suggested that Plaintiff "retire and do other things";

(6) Ferré commented that Plaintiff had "manías de vieja" ("old

person's ways") because she used a heater and was always cold; and

(7) Ferré repeatedly told Plaintiff, "Doña Lydia, I don't know what

I'm going to do with you." Id.

Ferré was not involved in the decision to suspend Plaintiff and

later terminate her employment with Defendant. Id. at Exh. 4.  Since

_____

[1]Although both Delgado Graulau and Krystek involved Title VII, not
ADEA claims, the Supreme Court has stated that "interpretation of Title VII
. . . applies with equal force in the context of age discrimination, for
the substantive provisions of the ADEA 'were derived in haec verba from
Title VII.'" Olmstead v. Zimring, 527 U.S. 581, 617 n.1 (1999) (Thomas, J.,
dissenting) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111,
121 (1985)).

Civil No. 98-1965 (JAF)                                                  13-

Ferré did not have any authority over Plaintiff's termination, we find that the alleged statements made by her in reference to Plaintiff's age do not evidence that Defendant's stated, non-discriminatory reason for her dismissal was actually a pretext for age discrimination. See Delgado-Graulau, 130 F. Supp. 2d at 330.

### b.    Statements by Mercado

Plaintiff argues that age-related comments by Mercado also evidence discrimination on the basis of her age. Docket Document No. 32, Exh. 1. Mercado purportedly commented that Plaintiff had "manías de vieja." Id. Mercado allegedly told Plaintiff, "Are you still here? I thought you had been discharged or terminated a long time ago." Id. On another occasion, Mercado purportedly asked Plaintiff, "Mom, can I help you?" Id.

We find that the comments allegedly made by Mercado do not constitute evidence of age discrimination. Plaintiff has not proffered evidence showing that these remarks by Mercado were proximate in time to her July 15, 1997 dismissal, nor has she shown that these comments related to the adverse employment action at issue. See Delgado-Graulau, 130 F. Supp. 2d at 330. Consequently, we find that Mercado's purported statements are not probative of age discrimination.

Civil No. 98-1965 (JAF)                                                    14-

## 2.    Alleged Differential Job Assignments

Plaintiff claims that Defendant's assignment of certain types of stories to her evidenced age discrimination. <u>Docket Document No. 32, Exh. 1</u>.  Plaintiff complains that she was never assigned to cover a fashion show, whilst her younger colleagues were given those coveted projects. <u>Id.</u>  Instead of giving Plaintiff the fashion assignments she wanted, Defendant directed her to write stories about Puerto Rican folk culture, Puerto Rican artisans, the Taíno Indians, and Puerto Rican history. <u>Id.</u>

Differential treatment of younger and older employees may constitute circumstantial evidence of age discrimination.  <u>See Mesnick</u>, 950 F.2d at 824.  We find that Plaintiff's single complaint about her job assignments is too impuissant to be probative of age discrimination.

As a newspaper of general circulation, EL NUEVO DÍA employs multiple reporters to cover a wide range of topics.  The newspaper is free to distribute job assignments in the manner that it chooses, so long as it does not discriminate against individuals on any prohibited basis or engage in any other unlawful conduct.

Here, there is no indication that Defendant did not assign Plaintiff to cover fashion shows because of her age.  There are numerous legitimate reasons that Defendant could have had for

Civil No. 98-1965 (JAF)                                              15-

distributing assignments in the way that it did, and Plaintiff's

contention that Defendant did not assign her to cover fashion shows

due to her age is nothing more than conjecture.

### 3.   Landrón's Testimony

According to Landrón, Plaintiff's former supervisor at EL NUEVO

DÍA, Plaintiff was a talented reporter who contributed much to the

newspaper. Docket Document No. 51, Exh. D.  In late 1995 or in 1996,

Ferré allegedly asked Landrón to suggest to Plaintiff that she take

an early retirement. Id.  Landrón inferred that Defendant wanted to

terminate Plaintiff's employment with the newspaper, possibly because

of Plaintiff's age. Id.

We first note that "an offer of early retirement is not, on its

own, evidence of discriminatory animus." Baralt v. Nationwide Mut.

Ins. Co., 251 F.3d 10, 16 n.7 (1st Cir. 2001).  For an offer of early

retirement to constitute evidence of age discrimination, "a plaintiff

must show that the offer was nothing more than a charade, that is, a

subterfuge disguising the employer's desire to purge plaintiff from

the ranks because of his age." See Vega, 3 F.3d at 480.

At her deposition, Landrón testified to the following:

> DEPONENT: Well, I inferred that . . . well,
> that they wanted to get Doña Lydia out of the
> newspaper.  Of course, that is obvious, right?
> Because an early retirement.  And if . . . and
> it was because of the condition that she had

Civil No. 98-1965 (JAF)                                                    16-

told me and I inferred, and I am going to say it
again, I inferred that it could be for age.    I
mean, it's an inference.
          ATTORNEY: And why do you infer that it
could be due to her health condition or her age?
And I am speaking in regard to your function as
director and Doña Lydia's boss.
          DEPONENT: Well, I inferred that because in
my opinion as the director, Doña Lydia was an
excellent reporter . . . and a person who added
a great deal to the functioning of the "Por
Dentro" department.

Docket Document No. 51, Exh. D.

     To defeat a motion for summary judgment, "the nonmovant must

'produce specific facts, in suitable evidentiary form,' sufficient to

limn a trial worthy issue.    Failure to do so allows the summary

judgment engine to operate at full throttle." Lawton v. State Mut.

Life Assurance Co. of Am., 101 F.3d 218, 223 (1st Cir. 1996).    In

deciding a motion for summary judgment, we do not consider evidence

that would be excluded at trial. See Vázquez v. López-Rosario, 134

F.3d 28, 33 (1st Cir. 1998).

     Rule 701 of the Federal Rules of Evidence provides:

          If the witness is not testifying as an expert,
          the witness' testimony in the form of opinions
          or inferences is limited to those opinions or
          inferences which are (a) rationally based on the
          perception of the witness, (b) helpful to a
          clear understanding of the witness' testimony or
          the determination of a fact in issue, and (c)
          not based on scientific, technical, or other
          specialized knowledge within the scope of Rule
          702.

Civil No. 98-1965 (JAF)                                         17-

FED. R. EVID. 701. The testimony of lay witnesses is generally limited to matters within their personal knowledge. See United States v. Santos, 201 F.3d 953, 963 (7th Cir. 2000). In accordance with Rule 701, courts do not admit speculative inferences by lay witnesses. Id.; United States v. Marshall, 173 F.3d 1312, 1315 (11th Cir. 1999).

Here, Landrón offered her opinion that Defendant could have been seeking to terminate Plaintiff's employment on account of her age. Landrón had no personal knowledge as to whether Defendant actually harbored a discriminatory animus against Plaintiff due to her age. Speculative inferences by lay witnesses are not admissible into evidence in accordance with Rule 701. Consequently, we do not consider Landrón's testimony regarding Defendant's alleged age discrimination in deciding this summary judgment motion.

### 4.   Conclusion

In sum, Plaintiff has not proffered sufficient evidence of a discriminatory animus to prevent summary disposition of her ADEA claim. "Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice." Vega, 3 F.3d at 479. Based on the record before us, no reasonable jury could find that Defendant terminated Plaintiff on account of her age. Accordingly, we grant Defendant's motion for summary judgment of Plaintiff's ADEA cause of action.

Civil No. 98-1965 (JAF)                                                    18-

## B.   Americans with Disabilities Act

Defendant argues that it is entitled to summary judgment on Plaintiff's ADA claim since Plaintiff herself stated in her deposition that she did not believe that her alleged disability was related to her termination. Docket Document No. 32.

Plaintiff contends that (1) she is a qualified individual with a disability within the meaning of the ADA; (2) Defendant is an employer covered by the ADA; (3) Defendant knew of and did not reasonably accommodate Plaintiff's disability; and (4) Defendant's failure to accommodate Plaintiff's disability affected the terms, conditions, or privileges of her employment. Docket Document No. 39. Plaintiff alleges that she had a back impairment and requested an orthopedic chair. Id. Plaintiff complains that Defendant did not provide her with an orthopedic chair, hand rest, computer screen, adjusted desk, and a stand to accommodate her disability. Id.

The ADA prohibits employers from discriminating against disabled persons. Specifically, the ADA provides that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Civil No. 98-1965 (JAF)                                                    19-

42 U.S.C. § 12112(a). The ADA prohibits employers from discriminating against disabled persons by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

To invoke the protections of the ADA, a plaintiff must have a disability within the meaning of the statute. See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000) (discriminatory discharge claim); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999) (failure-to-accommodate claim).

Defendant argues that Plaintiff has not proffered sufficient evidence to show that she is a qualified individual with a disability within the meaning of the ADA. Docket Document No. 41.

Plaintiff maintains that she is a qualified individual with a disability within the meaning of the statute. Docket Document No. 39. Plaintiff is apparently arguing that her orthopedic problems constitute a physical impairment which substantially limits her in the major life activity of working. See Docket Document No. 39, Exh. F.

AO 72
(Rev 8/82)

Civil No. 98-1965 (JAF)                                                    20-

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see also Tardie v. Rehabilitation Hosp. of R.I., 168 F.3d 538, 541 (1st Cir. 1999).

### 1.  Physical Impairment

A "physical impairment" is defined as:  "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (2001); see also Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 9 (1st Cir. 1999).

The record evidences that Plaintiff has various ailments that might be characterized as orthopedic problems: knee and ankle traumas, chest trauma, costochondritis, a temporomandibular disorder, back problems, neck pain, and thoracic outlet syndrome.[2] See Docket

---

[2]The record also shows that Plaintiff suffers from diabetes mellitus and obesity. Docket Document No. 39, Exh. F.  Since Plaintiff has not argued that she is disabled within the meaning of the ADA because she has these conditions, see Docket Document No. 39, we do not consider whether these ailments constitute physical impairments.

Civil No. 98-1965 (JAF)                                                    21-

Document No. 34, Exhs. 1, 5, Docket Document No. 39, Exh. F, Docket
Document No. 51, Exh. A.

Plaintiff's orthopedic problems constitute a physical impairment
within the meaning of the ADA. See 28 C.F.R. § 35.104(1)(ii) (2001)
("physical impairment" includes orthopedic conditions).

### 2.    Major Life Activity

This court finds that working is a major life activity. See 29
C.F.R. § 1630.2(i); see also Gelabert-Ladenheim v. Am. Airlines,
Inc., 252 F.3d 54, 58 (1st Cir. 2001) (accepting arguendo that working
is a major life activity).

### 3.    "Substantially Limits"

Equal Employment Opportunity Commission ("EEOC") regulations
provide guidance as to the meaning of the phrase "substantially
limits."

> With respect to the major life activity of
> working . . . [t]he term substantially limits
> means significantly restricted in the ability to
> perform either a class of jobs or a broad range
> of jobs in various classes as compared to the
> average person having comparable training,
> skills and abilities. The inability to perform
> a single, particular job does not constitute a
> substantial limitation in the major life
> activity of working.

29 C.F.R. § 1630.2 (j)(3)(i).  In determining whether an individual
is substantially limited in a major life activity, courts should

Civil No. 98-1965 (JAF)                                              22-

consider the following factors: (1) "[t]he nature and severity of the

impairment," (2) "[t]he duration or expected duration of the

impairment," and (3) "the permanent or long term impact, or the

expected permanent or long term impact of or resulting from the

impairment." Id. § 1630.2(j)(2). In the specific context of deciding

whether an individual is substantially limited in the major life

activity of working, courts may consider the following additional

factors:

> (A)  The geographical area to which the individual has reasonable access;
> (B)  The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
> (C)  The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

Id. § 1630.2(j)(3).

The record contains some evidence regarding the nature and

severity of Plaintiff's impairment. At her deposition, Plaintiff

claimed that she has back problems that prevent her from remaining

Civil No. 98-1965 (JAF)                                                    23-

seated for long periods of time, and from lifting heavy objects.

Docket Document No. 51, Exh. A.  Plaintiff's back problems cause her

to have difficulty walking. Id.  Specifically, Plaintiff experiences

pain and stiffness in her back, her legs become heavy, and it becomes

difficult for her to maintain her balance. Id.  Plaintiff experiences

spasms in the cervical area, and she suffers from pain throughout her

body, particularly in her neck, chest, and back. Id.  According to

Plaintiff's own testimony, none of these conditions, including her

thoracic outlet syndrome, adversely affected her performance as a

reporter at EL NUEVO DÍA.[3] Id.

          Plaintiff has not proffered any evidence shedding light on

"[t]he duration or expected duration of the impairment," or on "[t]he

permanent or long term impact . . . of . . . the impairment." 29

C.F.R. § 1630.2(j)(2).  The record does not contain evidence

regarding the geographical area to which Plaintiff has reasonable

access and the number and types of jobs Plaintiff is disqualified

---

          [3]We also note that on July 7, 1997, Plaintiff began working for EL
NUEVO DÍA's rival newspaper, THE SAN JUAN STAR. Docket Document No. 34, Exh.
20.  Presumably, Plaintiff's new job with THE SAN JUAN STAR involved similar
duties as her former position with EL NUEVO DÍA.  Plaintiff has not claimed
that her orthopedic conditions have caused her any problems with her new
job, nor has she asserted that THE SAN JUAN STAR provided her with any
accommodations for her impairment. See Whitney v. Greenberg, Rosenblatt,
Kull & Bitsoli, P.C., 258 F.3d 30 (1st Cir. 2001) (finding that a plaintiff
cannot show that she is substantially limited in working where she can
perform without accommodation a job that is similar to the position in
which she alleged discrimination due to failure to accommodate).

Civil No. 98-1965 (JAF)                                                    24-

from    performing    because    of    her    impairment.    See    id.

§ 1630.2(j)(3)(ii).

Plaintiff    has    not    shown    that    her    orthopedic    conditions

substantially limit her in the major life activity of working.  While

Plaintiff's evidentiary burden is not particularly high, she must

still proffer evidence showing the approximate number of positions

Plaintiff is unable to fill due to her orthopedic problems.  See

Quint, 172 F.3d at 12 (An ADA plaintiff is required to adduce

"'evidence of general employment demographics and/or of recognized

occupational classifications that indicate the approximate number of

jobs (e.g., 'few,' 'many,' 'most') from which an individual would be

excluded because of an impairment.'") (internal citation omitted);

see also EEOC v. Rockwell Int'l Corp., 243 F.3d 1012, 1017 (7th Cir.

2001).  Plaintiff has failed to present testimony from a vocational

expert, labor market statistics, or any other evidence showing that

she is substantially limited in the major life activity of working.

See Gelabert-Ladenheim, 252 F.3d at 60-61.

Plaintiff has proffered a statement by Dr. Carlos E. Náter,

which is set forth in its entirety:

> The above named patient [Plaintiff] was under my
> medical care from 08/28/91 to 08/04/99 for the
> treatment of sever [sic] myofascial pain of the
> whole body and trunk.  She was found to be
> suffering [from] diabetes mellitus, obesity and

Civil No. 98-1965 (JAF)                                          25-

1        a temporomandibular disorder.  She has required
         the intervention of multiple specialists[.]
2        During and after 1995 her condition became
         aggravated in such a way that she became
3        significantly restricted to work as compared to
         the average person in the working community and
4        the condition, manner or duration under which
         she can work was significantly restricted.
5

6   Docket Document No. 39, Exh. F.  The statement is dated April 24,

7   2001.  Id.

8
         The April 24, 2001 note by Dr. Náter does not redeem Plaintiff's
9
10  case.  See Docket Document No. 39, Exh. F.  Dr. Náter stated in a

11  conclusory fashion that Plaintiff became restricted in her ability to

12  work as compared to the average person.  Id.  Dr. Náter failed to

13  articulate in sufficient detail the particular factors underlying his

14  conclusion, and he did not specify whether Plaintiff's diabetes
15
16  mellitus, obesity, and/or temporomandibular disorder purportedly

17  restrict her ability to work.  No reasonable jury could find that

18  Plaintiff was substantially limited in the major life activity of

19  working based on an unsubstantiated, vague statement prepared by one
20
21  of Plaintiff's prior physicians just one day before Plaintiff filed

22  her opposition to Defendant's summary judgment motion.  Moreover,

23  Dr. Náter's conclusion is belied by Plaintiff's own testimony that

24  her orthopedic conditions did not adversely affect her ability to
25
26  perform her job as a reporter.  See Docket Document No. 51, Exh. A.

Civil No. 98-1965 (JAF)                                              26-

In sum, this court finds that Plaintiff has not adduced
sufficient evidence for a rational fact-finder to conclude that she
has a disability within the meaning of the ADA. Consequently, we
grant Defendant's motion for summary judgment of Plaintiff's ADA
claims.

C.    **Law No. 44**

Puerto Rico's Law 44 is modeled after the ADA. See <u>Acevedo Lopez
v. Police Dep't of P.R.</u>, 247 F.3d 26, 29 (1st Cir. 2001) ("[T]he
Commonwealth prohibits employment discrimination on the basis of
disability in a similar fashion as the ADA."); <u>Berrios v. Bristol
Myers Squibb</u>, 51 F. Supp. 2d 61, 67 (D.P.R. 1999) ("[T]he Puerto Rico
legislature, by amending Law 44 in late 1991, sought to accommodate
local law with the Americans with Disabilities Act, its federal
counterpart.").

Like the ADA, Law 44 prohibits discriminatory discharge of
persons with disabilities.[4] See 1 L.P.R.A. § 505 (1999). Law 44, like

_____

[4]The statute provides, in part:

        Private or public institutions shall not
    practice, put into effect or use discriminatory
    employment procedures, methods, or practices against
    persons with any kind of physical, mental or sensory
    disability just for the sake of said handicap. This
    prohibition includes the recruitment, compensation,
    fringe benefits, reasonable accommodation and access
    facilities, seniority, participation in training
    programs, promotion or any other term, condition or

Civil No. 98-1965 (JAF)                                                    27-

its federal counterpart, requires employers to provide reasonable

accommodations for disabled persons.[5] See id.; see also 1 L.P.R.A.

§ 507a (1999).

    Since Law 44 and the ADA are parallel statutes and Plaintiff's

claims under both statutes arise from the same underlying facts, we

dispose of Plaintiff's Law 44 claims in the same manner as her ADA

claims.  Hence, we grant Defendant's motion for summary judgment of

Plaintiff's Law 44 claims of discriminatory discharge and failure to

accommodate.

--------------------

            privilege in the employment. . . .
                    . . . [T]he following actions shall also be
            deemed to be discriminatory practices . . . . :
                    . . . .
                    . . . [To] deny employment to a qualified
            person with physical, mental, or sensory limitations
            when this denial is based on the intention of not
            providing reasonable accommodations.

1 L.P.R.A. § 505.

    [5]The statute stipulates, in part:

            [Employers] shall be bound to carry out reasonable
            accommodations in the workplace in order to ensure
            that qualified disabled persons will be allowed to
            work effectively and to the maximum of their
            productivity, except when the employer is able to
            prove that such reasonable accommodations would
            represent an extremely onerous burden for the
            enterprise in financial terms.

1 L.P.R.A. § 507a.

AO 72
(Rev 8/82)

Civil No. 98-1965 (JAF)                                              28-

**D.  Law No. 80 and Law No. 100**

Defendant seeks summary judgment of Plaintiff's Law 80 cause of action on the ground that Defendant had just cause for terminating her employment. <u>Docket Document No. 32</u>.  Defendant also argues that Plaintiff waived her Law 80 claim by failing to submit the dispute to arbitration, as required pursuant to the CBA. <u>Id.</u>  Defendant avers that summary judgment of Plaintiff's Law 100 claim is appropriate, since her termination was for just cause and there is no evidence of discrimination. <u>Id.</u>

Puerto Rico's wrongful termination statute provides that an employee discharged from his employment without just cause is entitled to indemnity from his former employer. 29 L.P.R.A. § 185a. In addition, Law 80 plays a role in the analysis of an anti-discrimination claim brought under Law 100.

Pursuant to Law 100, a private cause of action exists for any person discharged from his employment on the basis of age. 29 L.P.R.A. § 146.  A Law 100 plaintiff may establish a prima facie case by: 1) demonstrating that she was actually or constructively discharged; and 2) alleging that the dismissal was discriminatory. <u>Cardona Jimenez v. Bancomercio de P.R.</u>, 174 F.3d 36, 42 (1st Cir. 1999).  The plaintiff benefits from two presumptions. <u>Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.</u>, 152 F.3d 17, 28 (1st Cir. 1998).

Civil No. 98-1965 (JAF)                                          29-

Under Law 80, an employee's termination is presumed to be unjustified

unless the employer can demonstrate good cause. Id.  Pursuant to Law

100, if the employer cannot show good cause, the dismissal is

presumed to have been discriminatory. Id.

     If a plaintiff has proven by a preponderance of the evidence

that she was actually or constructively discharged, Law 80 shifts the

burden of proof onto the employer to demonstrate good cause for the

termination. Id.  Puerto Rico's wrongful discharge statute sets forth

an illustrative list of good causes for discharging an employee. See

29 L.P.R.A. § 185b.

     If the employer cannot demonstrate good cause for the discharge,

the Law 100 presumption of discrimination is triggered. Alvarez-

Fonseca, 152 F.3d at 28.  The employer must then show, by a

preponderance of the evidence, that the dismissal was not motivated

by discriminatory animus. Id. (discussing Law 100).

     If the employer can show good cause, the Law 100 presumption

does not apply, and the plaintiff has the burden of proving the

ultimate issue of discrimination, as in any other civil case. Id.

The plaintiff must show that, notwithstanding the good cause put

forth by the employer, the defendant nonetheless breached Law 100 by

dismissing the plaintiff for discriminatory reasons instead of, or in

addition to, the lawful reason given for the termination. Id.  "The

Civil No. 98-1965 (JAF)                                        30-

Law 100 plaintiff is then in [the] same situation as an ADEA plaintiff after the defendant has articulated a legitimate, non-discriminatory reason for its actions." Id.

To establish a prima facie case under Law 100, a plaintiff need only demonstrate that she was discharged and allege that the dismissal was motivated by discriminatory animus. Cardona Jimenez, 174 F.3d at 42.    It is undisputed that Defendant terminated Plaintiff's employment on July 15, 1997.  Moreover, Plaintiff has alleged that her termination was motivated by unlawful age discrimination.  Consequently, we find that Plaintiff has established a prima facie case under Puerto Rico's anti-discrimination statute.

If a plaintiff has demonstrated by a preponderance of the evidence that she was discharged from her employment, Law 80 shifts the burden of proof onto the employer. Alvarez-Fonseca, 152 F.3d at 28.  The employer must put forth a good cause for the termination.

Here, Defendant has submitted evidence showing that Mercado dismissed Plaintiff because of her improper affiliation with a rival newspaper, in violation of Defendant's rule against conflicts of interest.  According to Mercado's affidavit, "[o]n July 15, 1997, I terminated Mrs. Lydia González' employment because she was working for The San Juan Star, while on El Nuevo Día's payroll and receiving

Civil No. 98-1965 (JAF)                                              31-

benefits from El Nuevo Día, which was a breach of El Nuevo Día's rule

against conflicts of interest." <u>Docket Document No. 32, Exh. 4</u>.

   We find that Defendant has met its burden of showing that

Plaintiff's dismissal was based on good cause.[6]  Consequently, we

grant Defendant's motion for summary judgment of Plaintiff's Law 80

claim.

   Since Defendant has demonstrated good cause for Plaintiff's

termination, Plaintiff has the burden of proving that Defendant

discriminated against her because of her age to prevail on a Law 100

claim.  As we explicated <u>supra</u>, in section III(A), Plaintiff has not

proffered sufficient evidence for a rational fact-finder to conclude

that Defendant harbored a discriminatory age animus against her.

Therefore, we grant Defendant's motion for summary judgment of

Plaintiff's Law 100 claim.

**E.    Defendant's Counterclaim**

   Defendant seeks summary judgment of its $6,000 counter-claim

against Plaintiff. <u>Docket Document No. 32</u>.

---

   [6]The following reasons constitute good cause for terminating an
employee:  "[t]hat the worker indulges in a pattern of improper or
disorderly conduct" or "[t]he employee's repeated violations of the
reasonable rules and regulations established for the operation of the
establishment, provided a written copy thereof has been opportunely
furnished to the employee." <u>See</u> 29 L.P.R.A. § 185b(a); 185b(c).

Civil No. 98-1965 (JAF)                                              32-

A contract is binding from the time an individual consents to it.[7] 31 L.P.R.A. § 3375 (1991). "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994 (1991).

On June 13, 1999, Defendant issued a $6,000 check to Plaintiff as an advance on her retirement package. Docket Document No. 32. Plaintiff later decided not to accept Defendant's resignation agreement and retirement package. Id. Plaintiff signed an agreement promising to repay the debt by June 27, 1997. Id. It is undisputed that Plaintiff has not returned the $6,000 that was loaned to her by Defendant. Id.; Docket Document No. 39.

Plaintiff contracted with Defendant to return the money owed by June 27, 1997. Over four years have elapsed since the date set for repayment, and Plaintiff still has not paid the $6,000 owed. Plaintiff has not advanced any argument why the loan should not be repaid. Therefore, we grant summary judgment in favor of Defendant on its counterclaim.

---

[7]The statute reads: "Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law." 31 L.P.R.A. § 3375.

Civil No. 98-1965 (JAF)                                                    33-

## IV.

### Conclusion

In accordance with the foregoing, we **GRANT** Defendant's motion

for summary judgment of Plaintiff's ADEA, ADA, Law 44, Law 80, and

Law 100 claims, and Defendant's counterclaim.  This Opinion and Order

disposes of Docket Document Nos. 32, 39, and 41.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this *30th* day of August, 2000.

JOSE ANTONIO FUSTE

U. S. District Judge